UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ENDURANCE AMERICAN INSURANCE
COMPANY,

                Appellant,

    -against-                                 1:22-CV-00611 (LEK)

STANLEY LAWRENCE DISTEFANO,
JR.,

                Appellee.

---

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

Before the Court is a creditor's appeal from an Order, Dkt. No. 5-11 ("Reconsideration Order"), and Memorandum-Decision and Order, Dkt. No. 5-20 ("Remand MDO"), issued by the Bankruptcy Court for the Northern District of New York, the Honorable Robert E. Littlefield, Jr., presiding ("Bankruptcy Court"). See Dkt. Nos. 1 ("Notice of Appeal"), 7 ("Appellant's Brief") (collectively, "Appeal"). Appellant Endurance American Insurance Company is a creditor in the underlying bankruptcy action. In re DiStefano, No. 16-10694-1 (Bankr. N.D.N.Y.) ("DiStefano I" or "Bankruptcy Action"). Appellee Stanley Lawrence DiStefano, Jr., is the sole debtor in the Bankruptcy Action.

The parties have appeared before the Court twice in relation to this Bankruptcy Action. First, in 2020, this Court affirmed the Bankruptcy Court's determination that Appellee's condominium property in Hawaii (the "TBE Property") was not exempt from the bankruptcy

estate. <u>See</u> Dkt. No. 5-3 ("Exemption MDO") at 19;[1] <u>DiStefano v. Endurance Am. Ins. Co.</u>, No. 19-CV-1258 (N.D.N.Y. 2020) (Kahn, J.) ("<u>DiStefano II</u>"), Dkt. No. 14 ("Exemption Appeal MDO") at 12–13.[2]

Second, in 2021, the Court heard Appellant's appeal from the Bankruptcy Court's denial of Appellant's motion to reconsider, amend, or vacate the Bankruptcy Court's general discharge order. <u>See</u> Dkt. Nos. 5-7 ("Reconsideration Motion"), 5-6 ("Discharge Order"); <u>Endurance Am. Ins. Co. v. DiStefano</u>, No. 20-CV-203 (N.D.N.Y. 2021) (Kahn, J.) ("<u>DiStefano III</u>"). The Court ultimately remanded that appeal to the Bankruptcy Court with a mandate to determine whether Appellant's Reconsideration Motion was ripe. <u>See</u> Dkt. No. 5-14 ("Reconsideration Appeal MDO") at 5–6. The Bankruptcy Court concluded that the Reconsideration Motion was ripe for review, upholding the Reconsideration Order. <u>See</u> Remand MDO at 7.

Appellant filed this Appeal following entry of the Remand MDO. For a second time, Appellant requests that the Court reverse the Reconsideration Order on its merits and direct the Bankruptcy Court to grant its Reconsideration Motion. In particular, Appellant seeks to have this Court either (1) amend the Discharge Order to clarify that the Discharge Order itself does not render the TBE Property exempt from process in the instant bankruptcy, or (2) vacate and temporarily defer the Discharge Order until the TBE Property is liquidated. As a third alternative, Appellant asserts that the Discharge Order should be declared void based on a jurisdictional defect. <u>See</u> Appellant's Br. at 12 n.4; Dkt. No. 11 at 8 n.3.

---

[1] All page numbers for docket entries refer to page numbers generated by the Court's Electronic Case Files system.

[2] This docket entry is also a reported decision: <u>DiStefano v. Endurance Am. Ins. Co.</u>, 620 B.R. 687 (N.D.N.Y. 2020) (Kahn, J.).

Appellee has filed a brief in opposition to the Appeal. Dkt. No. 8 ("Appellee's Brief"). Appellant has filed a reply to Appellee's Brief. Dkt. No. 11 ("Appellant's Reply").

For the reasons that follow, Endurance American Insurance Company's Appeal is dismissed in its entirety for lack of subject-matter jurisdiction.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.  Underlying Bankruptcy and Exemption Dispute

#### 1.  *Bankruptcy Action and the TBE Property*

Appellee served as managing member for Green Island Construction Group, LLC ("Green Island"), which used performance bonds provided by Appellant to fund construction projects. See Exemption Appeal MDO at 2. As security for the repayment of these bonds, Appellee, his wife Christi Lynn DiStefano, and other relatives executed an indemnity agreement with Appellant on or about September 22, 2011. See DiStefano II, Dkt. No. 3-19 ¶ 24; see also id., Ex. E ("Indemnity Agreement"). Per the Indemnity Agreement, these signatories agreed to be personally, jointly, and severally liable for any payments which Green Island, as principal, might have owed to Appellant. See Indemnity Agreement at 1, 3.

Before the Indemnity Agreement was signed, Appellee disclosed to Appellant that he and his wife owned a condominium property in Hawaii. See Exemption Appeal MDO at 3. Appellee and his wife owned this property as a tenancy by the entirety. See DiStefano II, Dkt. No. 3-19, Ex. D.

Prior to the Bankruptcy Action, Appellant initiated an action in New York Supreme Court against Green Island, Appellee, his wife, and other indemnitors. See Dkt. No. 4-1 at 6–7. This litigation resulted in several orders between January 12, 2015, and April 24, 2015. See id. at

34–53. Appellant asserts that these orders granted them judgment liens securing the amount of $859,474.09 against all real and personal property of the indemnitors. See id. at 6–8.

The Bankruptcy Action began on April 20, 2016, when Janice DiStefano filed an involuntary Chapter 7 petition against Appellee. See DiStefano I, Dkt. No. 1. Appellant asserted a claim in the amount of $1,769,317.00, partially secured in the amount of $859,474.09, making them Appellee's largest creditor. See Dkt. No. 4-1 at 2; Appellant's Br. at 9.

### 2. Denial of the TBE Property Exemption

On May 15, 2018, Appellee filed an amended Schedule C with the Bankruptcy Court that claimed, for the first time, that the TBE Property was exempt from the bankruptcy estate pursuant to "11 U.S.C. 522(b)(3)(B) and Haw. Rev. Stat. § 509-2" for "100% of [its] fair market value, up to any applicable statutory limit." Dkt. No. 4-5 at 2.  Appellant objected to this exemption claim. See DiStefano I, Dkt. Nos. 247, 262, 273, 280, 286, 305.

The Bankruptcy Court sustained Appellant's objection on September 30, 2019. See Exemption MDO at 19. As is relevant here, the Bankruptcy Court held that Hawaiian state law governed Appellee's exemption claim under 11 U.S.C. § 522(b)(3)(B). Id. at 11–12. Under controlling Hawaiian law, tenancies-by-the-entirety are exempt from process by a creditor of only one spouse during the spouses' joint ownership; however, such property is not exempt by virtue of the entireties co-tenancy if there has been a "joint action of the spouses" that renders the spouses jointly liable to the creditor. Id. at 13–14 (citing Sawada v. Endo, 57 Haw. 608, 614, 617 (1977)). The Bankruptcy Court held that joint execution of the Indemnity Agreement by Appellee and his wife was a joint action sufficient to allow Appellant to hypothetically issue process against the TBE Property. See id. at 15–16. The Bankruptcy Court therefore held that the TBE Property was not exempted from the bankruptcy estate. See id. at 19.

4

On October 10, 2019, Appellee appealed the Exemption MDO to this Court. See Dkt. No. 5-4. Appellee raised two issues in this appeal. See Exemption Appeal MDO at 5–6. First, Appellee argued that the Bankruptcy Court had erred in holding that execution of the Indemnity Agreement was sufficient "joint action" under Sawada to render the TBE Property not exempt from process. Id.; see also DiStefano II, Dkt. No. 9 at 17–23. Second, Appellee argued that the Discharge Order, which the Bankruptcy Court had entered during the pendency of his appeal from the Exemption MDO, had eliminated the joint liability underlying Appellant's claim to the TBE Property; thus, Appellee argued that Appellant's objection to the exemption should be dismissed. See Exemption Appeal MDO at 6; see also DiStefano II, Dkt. No. 9 at 23–26.

As to the first argument, the Court agreed with the Bankruptcy Court that the execution of the Indemnity Agreement was sufficient to render the TBE Property non-exempt. See Exemption Appeal MDO at 10–12 ("While Hawaii law does not expressly address the question of whether, when spouses agree to joint and several liability under an indemnity agreement, they satisfy Sawada's joint action requirement, what case law there is indicates that they do."). The Court found the Appellee could not raise the second argument on appeal, as it had not been raised before the Bankruptcy Court. See id. at 19–20. This Court thus affirmed the Bankruptcy Court's decision that the TBE Property was not exempt from the Bankruptcy Action, and remanded the matter back to the Bankruptcy Court. See id.

**B.  Discharge Order, Reconsideration Motion, and Appeal**

*1. Appellant's Motion for Reconsideration*

On November 26, 2019, the Bankruptcy Court issued the Discharge Order, and no party objected. See Appellant's Br. at 1. This Discharge Order was issued during Appellee's appeal of the Exemption MDO. See id. at 12 n.4.

On December 10, 2019, Appellant filed a motion to reconsider or amend the Discharge Order. Recons. Mot. at 1. Appellant primarily sought two forms of relief in its motion. First, they asked the Bankruptcy Court to "amend the Discharge Order to clarify that it does not in any way, and should not be construed to, render the [TBE Property] immune from process as to [Appellant's] claim, and the Discharge Order should further make clear that the Trustee's and [Appellant's] rights to proceed against the Property are preserved." Recons. Mot. ¶ 17.  Second, in the alternative, Appellant has asked "that the Discharge Order be vacated and the discharge be deferred as to [Appellant]" pending liquidation of the TBE Property. Recons. Mot. ¶ 18; see also Appellant's Reply Br. at 6–7 (clarifying that Appellant was not seeking to "permanently revoke or deny the [Appellee's] discharge," but rather that it "sought merely to amend the Discharge Order for a single, limited purpose: to clarify the scope and extent of the [Appellee's] discharge and thus foreclose the [Appellee] and his wife from asserting . . . that the [Appellee's] interest in the [TBE Property] has been wrested . . . back into the hands of the [Appellee].").

Appellant raised three arguments in support of its motion for reconsideration. First, Appellant noted that FRBP 9023 permits motions to alter or amend a judgment under the standard set by FRCP 59. See Recons. Mot. ¶¶ 20–21. Appellant argues that this standard is met because "it would be manifestly unjust if the Discharge Order were possibly construed to impact . . . Trustee's and [Appellant's] rights as to the Property." Id. ¶ 21.

Second, Appellant argued that relief was warranted under FRBP 9024, which allows relief from a final order under the standard set by FRCP 60. See id. ¶¶ 22–25. Specifically, FRCP 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[,] . . . . [or] any other reason that justifies relief." Id. ¶ 23 (quoting FRCP 60(b)).

Third and finally, Appellant asserted that, "[b]y amending the Discharge Order, or vacating the Order and deferring the discharge as to [Appellant], the Court would be issuing an Order necessary and appropriate to implement its prior Orders" pursuant to 11 U.S.C. § 105(a). Id. ¶ 27. This is because Appellant believed that precluding Appellee or his spouse from "argu[ing] that the Discharge Order means that the debt owed to [Appellant] is no longer owed by the [Appellee] and therefore not a joint debt" was necessary to implement the Exemption MDO. See id. ¶¶ 28–31.

In its preliminary statement, Appellant acknowledged that the relief they were seeking is substantially similar to the effect of the Bankruptcy Court's Exemption MDO, but argued that this Court should amend or vacate the Discharge Order regardless, because Appellant sought to reinforce the Exemption MDO "out of an abundance of caution:"

> [Appellant] files this Motion out of an abundance of caution to assure that this Court's Orders will be enforced, [Appellant's] and the Trustee's rights to proceed against the [TBE Property] are fully preserved, and the entry of the Order of Discharge in this case on November 26, 2019 does not unintentionally impact the Court's decisions overruling the [TBE Property] exemption and allowing [Appellant's] claim.

> . . .

> Although this Court's decision finding that the [TBE Property] is not exempt from process as to [Appellant] should be sufficient to preserve the Trustee's and [Appellant's] rights to proceed against the property, [Appellant] wants to ensure, especially given the extensive litigation in this case and related matters, that the [Appellee] and his spouse cannot attempt to use the discharge to remove rights granted by this Court.

> The Order of Discharge should not be construed to moot this Court's decisions on the exemption and on [Appellant's] claim, and the Order of Discharge should be amended to so reflect or vacated to defer the discharge as to [Appellant's] claim until the [TBE Property] is sold and the proceeds are distributed therefrom.

Id. at 1–2; see also Dkt. No. 5-10 ("Hearing Transcript") at 6:1–25.

### 2. Appellee's Opposition

Appellee opposed Appellant's Reconsideration Motion on January 14, 2020. Dkt. No. 5-8 ¶¶ 17–41. First, he argued that a Discharge Order, given its central purpose in bankruptcy, may only be revoked under circumstances permitted in 11 U.S.C. § 727(d), which were inapplicable. Id. ¶¶ 17–20. Second, Appellee argued that the powers granted to the Bankruptcy Court under 11 U.S.C. § 105(a) could not be used to "contravene specific statutory provisions" of the Bankruptcy Code or Rules, and thus could not be exercised to revoke Appellee's discharge as requested by Appellant. Id. ¶¶ 21–22 (quoting Law v. Siegel, 571 U.S. 415, 421 (2014)). Third, Appellee argued that objecting to a discharge and seeking extension of the time to object must be done within the time limits prescribed by Rules 4004(b) and 4007(c), i.e., before Appellee's discharge was issued. Id. ¶¶ 23–24. And fourth, Appellee argued that Appellant's failure to timely object to the Discharge Order undermined any argument Appellant would suffer a manifest justice if they did not obtain its requested relief. See id. ¶¶ 6, 29–30, 32–41.

### 3. The Bankruptcy Court's Ruling and the Exemption MDO

On February 5, 2020, the Bankruptcy Court held a hearing on the Reconsideration Motion. See Hr'g Tr. Two days later, it denied Appellant's Reconsideration Motion. See Recons. Order at 1–2. The Bankruptcy Court expressed concern that Appellant was seeking an advisory opinion via its Reconsideration Motion:

> [A]ll this is academic in the sense that there's nothing before me. I'm not going to give any advisory opinions other than to say we're really dancing around, shadow-boxing, the issue behind the curtain is a 363(h) motion . . . . But I assume if and when a [363(h)] motion is ever brought, [Appellee's counsel] will oppose it and we'll t-up the reasons why it shouldn't be granted and somebody else will t-up the reasons why it should be granted and I'll give you a ruling.

Hr'g Tr. at 4:25–5:11.[3] The Appellee had not yet filed any claim, motion, or other document with the Bankruptcy Court seeking to tangibly limit the ability of Appellant or the Trustee to dispose of the TBE Property on the basis of the Discharge Order. Id. at 4:25–5:6. The Bankruptcy Court was thus concerned that Appellant's claim that the Discharge Order created manifest injustice was premature. Id. at 3:21–24 ("But isn't that premature? It would only be . . . manifest injustice if we go two or three steps into the future and if this, then that, if this, then that, if this, then that. Right now there's no manifest injustice.").

The Bankruptcy Court then denied the Reconsideration Motion on its merits. The Bankruptcy Court held that it could not grant relief under 11 U.S.C. § 105(a), because 11 U.S.C. 727(d) limited the circumstances in which the Bankruptcy Court could grant the sort of narrow amendment of the Discharge Order that Appellant sought, and, in the absence of a showing of the circumstances contemplated by 11 U.S.C. § 727(d), 11 U.S.C. § 105(a) did not permit relief to the contrary. Id. at 5:13–21; see also id. at 2:14–3:3.

The Bankruptcy Court further held that Federal Rules of Bankruptcy Procedure 9023 and 9024 did not warrant relief, having failed to find the manifest injustice cited by Appellant:

> [T]he issue before me today is based on looking in the crystal ball in the future as to what might happen. And even if that were certain, I still have great concerns because, as [counsel for Appellee], once again, rightly points out, this isn't a great surprise. It was talked about. It was there. And for whatever reason, the record that the Court have today is the record that the Court have today. But it isn't like this all came out of the blue.

Id. at 5:22–7:11.

---

[3] A 363(h) motion is a motion brought under 11 U.S.C. 363(h), which governs the liquidation of co-owned properties.

The Bankruptcy Court summarized: "[Section] 105 does not trump [Section] 727. There's no basis under Rule 59 or Rule 60 that was given that would apply to these facts." Id. at 8:4–7. Thus, the Bankruptcy Court concluded that Appellant lacked any basis for vacating or amending the Discharge Order. See id. Accordingly, the Bankruptcy Court denied Appellant's Reconsideration Motion. See Recons. Order at 1–2.

### 4. Appellant's First Appeal and Reconsideration Appeal MDO

Appellant timely filed a notice of appeal from the Reconsideration Order on February 21, 2020. Dkt. No. 5-12. However, this Court entered a Memorandum-Decision and Order on July 22, 2021, remanding to the Bankruptcy Court for a determination as to the ripeness of Appellant's Reconsideration Motion. Recons. Appeal MDO, Dkt. No. 5-15.

In the Reconsideration Appeal MDO, this Court sua sponte considered a threshold issue of the Bankruptcy Court's jurisdiction to hear Appellant's Reconsideration Motion. In particular, this Court asked whether said motion was ripe for review and was thus a "case" or "controversy" within the Bankruptcy Court's jurisdiction. Id. at 4–5 (citing In re Nunez, No. 98-CV-7077, 2000 WL 655983, at *6 (E.D.N.Y. Mar. 17, 2000)). The Bankruptcy Court had expressed a concern that Appellant sought an advisory opinion as to effects of the Discharge Order, and this Court shared that concern. See id. at 5; Hr'g Tr. at 4:25–5:11. Appellant argued before this Court that a potential for manifest injustice existed because the Discharge Order "present[ed] [Appellee] with an opportunity to potentially undo or collaterally attack the Bankruptcy Court's prior orders— which approved [Appellant's] claim and denied [Appellee's] attempt to exempt his luxury [TBE Property]," while also acknowledging that the question of whether the Discharge Order actually had this effect "was not ripe for adjudication below or in the present appeal." DiStefano III, Dkt. No. 7 at 14 & n.3.

Despite its own concerns, the Bankruptcy Court had made legal conclusions on the merits of the Reconsideration Motion, implying that it had subject matter jurisdiction to hear the Reconsideration Motion without making a finding to this effect. Recons. Appeal MDO at 5. Thus, this Court remanded to the Bankruptcy Court for a determination as to the justiciability of the Reconsideration Motion. See id. at 5–6.

### 5. Remand MDO, and the Instant Appeal

On remand, Appellant and Appellee both filed statements urging the Bankruptcy Court to find in favor of ripeness, albeit for different reasons. Dkt. Nos. 5-16, 5-17. Appellant asserted "that [Appellee's] attempt to use the entry of the discharge as a means to remove property from the bankruptcy estate is outrageous, contrary to law, contrary to prior rulings in this case and should not be countenanced," Dkt. No. 5-17 ¶ 16, that "it is not a hypothetical situation since the [Appellee has already raised the argument in the Exemption Appeal and the [adversary proceeding],"[4] id., and that "[Appellant], the [Appellee's] largest creditor, will imminently suffer real and substantial injury, as will the [Appellee's] estate, if there is a determination in the [adversary proceeding] that the entry of the Discharge Order removed the [Appellee's] primary asset, the [TBE Property], from the bankruptcy estate," id. ¶ 17. Appellee argued that "[t]he issue was ripe because the discharge had been issued and [Appellant], to the very real and significant prejudice of the [Appellee], had created the threat that [Appellee's] discharge would be revoked." Dkt. No. 5-16 ¶ 7.

On May 25, 2022, the Bankruptcy Court issued the Remand MDO and held that it had jurisdiction over the Reconsideration Motion. First, the Bankruptcy Court concluded that the

---

[4] The adversary proceeding that Appellant references is Ehrlich v. DiStefano, No. 20-90016-1 (Bankr. N.D.N.Y.) ("DiStefano IV").

Reconsideration Motion was within its statutorily granted jurisdiction, finding that the motion

was a "core" proceeding as contemplated by 28 U.S.C. § 157 since it "concern[ed] both the

administration of the estate as well as the propriety of the discharge." Remand MDO at 3–4.

Second, the Bankruptcy Court concluded that the Reconsideration Motion was constitutionally

ripe for review "because the [Appellee's] discharge had been issued and [Appellant] timely

moved for reconsideration." Id. at 5. They further reasoned:

> [Appellant's] request was not tangentially related to the [Appellee's]
> discharge, it directly aimed to vacate or defer the entry of the
> Discharge Order. The issuance of the Discharge Order was not
> hypothetical; the [Appellee's] discharge was entered and has all
> effects as described in § 524 of the Bankruptcy Code.
>
> "When a debtor is granted a discharge in bankruptcy, the 'injury' to
> a creditor holding a dischargeable claim is that it is barred from
> seeking payment of that indebtedness from the debtor." Brown v.
> Brown (In re Brown), No. 18-10617, 2018 Bankr. LEXIS 2911, at
> *12 (Bankr. S.D.N.Y. 2018) (citing 11 U.S.C. § 524(a)(2)).
> Conversely, if the [Appellee's] discharge is vacated, deferred or
> otherwise manipulated, then the [Appellee] would be "injured" as
> his discharge would be in jeopardy. Hence, the Motion to
> Reconsider was constitutionally ripe for a judicial determination as
> it manifested a live controversy affecting the legal rights of
> [Appellee] and [Appellant].

Id. at 5–6. Third, the Bankruptcy Court held that the Reconsideration Motion was prudentially

ripe because (1) "the matter was fit for a judicial decision because the [Appellee's] discharge had

been issued," (2) "[Appellant] would endure a hardship if the Motion to Reconsider had not been

heard when it was filed," since, "if the Motion to Reconsider had not been filed, then the

Discharge Order would be a final and non-appealable order," and (3) "no further factual

development was needed." Id. at 6–7.

The Bankruptcy Court thus upheld its Reconsideration Order on remand. On June 8, 2022, Appellant filed a second notice of appeal, appealing both the Remand MDO and Reconsideration Order to this Court. Dkt. No. 5-21.

Appellant has not raised any new arguments in the instant appeal. Appellant does not challenge the Bankruptcy Court's findings in the Remand MDO regarding ripeness or subject matter jurisdiction. Instead, Appellant renews its dispute of the Bankruptcy Court's Reconsideration Order on its merits, stating a single issue presented on appeal: "Did the United States Bankruptcy Court for the Northern District of New York . . . err in denying [Appellant's] [Reconsideration Motion]." Dkt. No. 4 at 3.

## III.   LEGAL STANDARDS

### A.  Standard of Review for Denial of a Reconsideration Motion

Generally, "[t]he standard of review for the denial of a motion to reconsider is abuse of discretion." Davidson v. AMR Corp. (In re AMR Corp.), 566 B.R. 657, 665 (S.D.N.Y. 2017) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)); see also In re Lorick, 634 B.R. 220, 223 (E.D.N.Y. 2021). "A court 'abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions.'" In re Mader, No. 19-CV-2048, 2021 WL 1729472, at *4 (E.D.N.Y. Mar. 31, 2021) (quoting EEOC v. KarenKim, Inc., 698 F.3d 92, 99–100 (2d Cir. 2012)).

While denial of a reconsideration motion *as a whole* is generally reviewed for abuse of discretion, "a district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." Id. (citing In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007)); see also

Cnty. of Clinton v. Warehouse at Van Buren St., Inc., 496 B.R. 278, 280 (N.D.N.Y. 2013) ("In exercising its appellate jurisdiction, the district court distinguishes between findings of fact and conclusions of law; reviewing the former under the 'clear error' standard, and the latter de novo."). "Where a finding is mixed—i.e., it contains both conclusions of law and factual findings—the de novo standard applies." Cnty. of Clinton, 496 B.R. at 280 (citing Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994)).

**B. Justiciability and Standing**

*1. Standing*

Although bankruptcy courts are not Article III courts, their subject matter jurisdiction is nevertheless limited by the justiciability doctrines of Article III. See In re Interpictures, Inc., 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988) (holding that "although the Bankruptcy Court does not enjoy all of the powers and immunities of the District Court, it is nevertheless subject to all of the jurisdictional limitations and restraints which the Constitution imposes upon an Article III court"); see also In re Motors Liquidation Co., 829 F.3d 135, 168 (2d Cir. 2016) (finding that Article III "limitations apply to bankruptcy courts" (citing Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 679 (2015))).

Article III standing requires that a party requesting relief "show (i) an 'injury in fact,' (ii) a 'causal connection' between the injury and the challenged conduct, and (iii) a likelihood that the injury will be 'redressed by a favorable decision.'" In re Brown, No. 18-BR-10617, 2018 WL 4637465, at *3 (Bankr. S.D.N.Y. Sept. 25, 2018) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)); see also Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."); In re

Old Carco LLC, 576 F. App'x 37, 38–39 (2d Cir. 2014) (applying these standards to dismiss an appeal from a creditor's motion in a bankruptcy proceeding).

The first element of standing—injury-in-fact—requires that the party requesting relief allege a harm "that is concrete and actual or imminent, not conjectural or hypothetical." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) (internal quotation marks omitted). The third element—redressability—requires that the party seeking relief will "personally . . . benefit in a tangible way from the court's intervention" if their requested relief is granted. In re Old Carco, 576 F. App'x at 39 (alteration in original) (quoting Steel Co., 523 U.S. at 102–03). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." Id. (quoting Steel Co., 523 U.S. at 107). These elements must be established for "each type of relief sought." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).

There are further limits on standing specific to bankruptcy actions. While "[t]he current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution," the Second Circuit and other circuits have "adopted the general rule, loosely modeled on the former Bankruptcy Act, that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be 'a person aggrieved'—a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." In re DBSD N. Am., Inc., 634 F.3d 79, 88–89 (2d Cir. 2011) (quoting Int'l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 747 (2d Cir.1991)); see also In re Windstream Holdings Inc., 614 B.R. 441 (S.D.N.Y. 2020) ("In addition to the requirements imposed by Article III of the Constitution, an appellant in a bankruptcy case must be 'a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court.'" (quoting Sumpter v. DPH

15

Holdings Corp. (In re DPH Holdings Corp.), 468 B.R. 603, 612 (S.D.N.Y. 2012))). An appellant

from an order of a bankruptcy court therefore "must show not only 'injury in fact' under Article

III but also that the injury is 'direct[ ]' and 'financial.'" In re DBSD N. Am., Inc., 634 F.3d at 89.

*2.   The Doctrine of Exclusive Appellate Jurisdiction*

"The filing of a notice of appeal is an event of jurisdictional significance," as it "confers

jurisdiction" on the appellate court and divests the lower court "of its control over those aspects

of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58

(1982). This principle, known as the doctrine of exclusive appellate jurisdiction, applies to

appeals of bankruptcy court decisions; the timely filing of a notice of appeal divests a bankruptcy

court "of jurisdiction regarding issues on appeal, as well as matters undeniably related to issues

on appeal." In re Southold Dev. Corp., 129 B.R. 18, 19 (E.D.N.Y. 1991).

**C.  Federal Rule of Bankruptcy Procedure 9024**

Rule 60(b) of the Federal Rules of Civil Procedure ("FRCP"), incorporated by Federal

Rule of Bankruptcy Procedure ("FRBP") 9024, permits the court to "relieve a party or its legal

representative from a final judgment, order, or proceeding" where "the judgment is void." Under

FRCP 60(b)(4), "a judgment may be declared void for want of jurisdiction" only when the court

"plainly usurped jurisdiction." Cent. Vt. Pub. Serv. Corp., 341 F.3d at 190 (quoting Nemaizer v.

Baker, 793 F.2d 58, 65 (2d Cir. 1986)); see also United Student Aid Funds, Inc. v. Espinosa, 559

U.S. 260, 270–71 (2010) ("[A] void judgment is one so affected by a fundamental infirmity that

the infirmity may be raised even after the judgment becomes final. The list of such infirmities is

exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule.").

## IV.   DISCUSSION

### A.  The Court Lacks Jurisdiction to Decide the Merits of Appellant's Appeal

Appellant primarily seeks one of two forms of relief: (1) amendment of the Discharge Order "to clarify that it does not in any way, and should not be construed to, render the [TBE Property] immune from process as to [Appellant's] claim," Recons. Mot. ¶ 17; or (2) "that the Discharge Order be [temporarily] vacated and the discharge be [temporarily] deferred as to [Appellant]" pending disposition of the TBE Property in the Bankruptcy Action, Recons. Mot. ¶ 18. Neither of these requests for relief are justiciable. Therefore, to the extent Appellant seeks these two forms of relief, its Appeal must be dismissed for lack of subject-matter jurisdiction. See United States v. Hays, 515 U.S. 737, 742 (1995) (describing the Court's obligation to dismiss an action sua sponte when it lacks subject matter jurisdiction over the action).

### 1.   Appellant Has Not Pled an Injury-In-Fact

Appellant argues that the Bankruptcy Court's decision not to include it's requested language in the Discharge Order constitutes an injury-in-fact, because this decision will somehow allow Appellee to circumvent the Exemption MDO at a later date. See Recons. Mot. ¶¶ 17–18; see also Appellant's Br. at 15 ("Although Endurance maintains that the Exemption [MDO] is sufficient to preserve the Trustee's and Endurance's rights to proceed against the Property, the Bankruptcy Court's denial of Endurance's Reconsideration Motion has left the door ajar for Debtor to assert – wrongly – that Debtor and his wife may use the Discharge Order as a sword to improperly collaterally attack the Bankruptcy Court's decisions. In this appeal, Endurance respectfully requests that this Court shut that door, and amend the Discharge Order to clarify that it cannot be utilized by Debtor or his spouse to strip Endurance's, or the Trustee's, rights regarding the Property.")

17

Appellant alleges that they will suffer two injuries-in-fact in the absence of its requested relief. First, Appellant seems to allege that they have been injured by Appellee's mere act of arguing that the Discharge Order had the effect of removing Appellee's interest in the TBE Property from his bankruptcy estate. See Dkt. No. 5–17 ¶ 16 ("[Appellee's] attempt to use the entry of the discharge as a means to remove property from the bankruptcy estate is outrageous, contrary to law, contrary to prior rulings in this case and should not be countenanced."). However, the Court fails to see how the risk that Appellee might raise an argument could constitute either (1) an *imminent* harm, or (2) a direct pecuniary injury. See In re DBSD N. Am., Inc., 634 F.3d at 88–89.

Second, Appellant suggests that they are injured by the risk that the Bankruptcy Court may eventually accede to Appellee's argument that the Discharge Order had the effect of removing Appellee's interest in the TBE Property from his bankruptcy estate. See Dkt. No. 5-17 ¶ 17 ("[Appellant], the [Appellee's] largest creditor, will imminently suffer real and substantial injury, as will the [Appellee's] estate, if there is a determination in the [adversary proceeding] that the entry of the Discharge Order removed the [Appellee's] primary asset, the [TBE Property], from the bankruptcy estate.").

Two fatal flaws in Appellant's pleadings make this second alleged injury non-cognizable. First, the alleged harm is both contingent and highly attenuated. Indeed, Appellant's allegations are couched in conditional language, which suggests its injury is not "concrete and actual" or "imminent," but rather "conjectural or hypothetical." Steel Co., 523 U.S. at 103. See Recons. Mot. ¶ 14 ("[I]f the Discharge Order were to inadvertently undo the relief already ordered by this Court by allowing [Appellee] or his spouse to argue that the Discharge Order renders the debt not joint and therefore immune from process, such result would be manifestly unjust."); Id. ¶ 21

("[I]t would be manifestly unjust if the Discharge Order were possibly construed to impact those decisions and the Trustee's and [Appellant's] rights as to the Property were thereby impaired."); Id. ¶ 25 "If the Discharge Order were to inadvertently undo any of the relief already ordered by this Court, such result would be manifestly unjust."); see also Hr'g Tr. at 3:21–24 ("It would only be a manifest injustice if the Court go two or three steps into the future and if this, then that, if this, then that, if this, then that. Right now there's no manifest injustice.").

Second, Appellant seems to concede that the Exemption MDO prevents the outcome that they fear, further undermining any claim that the envisioned injury is either imminent or concrete. See Recons. Mot. at 2 ("Although this Court's decision finding that the [TBE Property] is not exempt from process as to [Appellant] should be sufficient to preserve the Trustee's and [Appellant's] rights to proceed against the property, [Appellant] wants to ensure . . . that the [Appellee] and his spouse cannot attempt to use the discharge to remove rights granted by this Court."); Appellant's Reply Br. at 16 ("It cannot be disputed that [Appellee's] interest in the [TBE Property] is part of the bankruptcy estate pursuant to 11 U.S.C. §541 and for purposes of 11 U.S.C. § 522(b)(3)(B). . . . [The Bankruptcy Court found] that [Appellee's] interest in the [TBE Property] was not exempt from process pursuant to 11 U.S.C. 522(b)(3)(B) and thus not exempt. The subsequent discharge of the [Appellee] does not remove his interest in the [TBE Property] from the bankruptcy estate." (internal citations omitted)). If Appellant believes that the Exemption MDO is sufficient to protect its interests, then it is unclear how the issuance of the Discharge Order caused any of the alleged injuries.

Therefore, the Court concludes that Appellant has not pled any justiciable injury, and that Appellant therefore lacks standing to bring this Appeal.

## 2. The Relief Sought Does Not Redress the Alleged Injuries

Even if the risks alleged by Appellant were cognizable injuries, those injuries could not be redressed by the relief sought. Because Appellant has already received a favorable outcome in the Exemption MDO, the changes they seek to make to the Discharge Order would not materially alter the alleged risks; instead, they would add redundant "belt-and-suspenders" language that merely reinforces the nearly-identical holding of the existing Exemption MDO. See Appellant's Br. at 14 (noting that Appellant ultimately seeks to "clarify that the entry of the Discharge Order does not" alter the holding of the Exemption MDO); see also Appellant's Br. at 1 ("Endurance files this Motion out of an abundance of caution to assure that this Court's Orders will be enforced."). Appellant has not explained how this relief will cure its alleged injuries more effectively than the Exemption MDO they are seeking to "enforce[]" out of "an abundance of caution." Appellant's Br. at 1.

After this Court's remand, the Bankruptcy Court found that Appellant was injured by the predominant effect of the Discharge Order: the injunction against collecting on a debt. See Remand MDO at 5–6. Typically, the discharge of a debtor is understood to injure creditors holding dischargeable claims, as the discharge functions to permanently "bar[] [the creditor] from seeking payment of that indebtedness from the debtor." In re Brown, 2018 WL 4637465, at *4; see also Taggart v. Lorenzen, 139 S. Ct. 1795, 1800 (2019) ("The words of the discharge order, though simple, have an important effect: A discharge order 'operates as an injunction' that bars creditors from collecting any debt that has been discharged." (quoting 11 U.S.C. § 524(a)(2))); Tucker v. Am. Int'l Grp., Inc., 745 F. Supp. 2d 53, 64 (D. Conn. 2010) (noting that the discharge injunction is "permanent"). However, Appellant's pleadings suggest that, insofar as Appellant requested only amendment or deferral of the Discharge Order, Appellant does not

seem to remedy the Discharge Order's permanent injunction against collection. Appellant does not seek to "permanently revoke or deny the Debtor's discharge" or "permanently except its unsecured debt from the discharge," but rather seeks "merely to amend [or defer] the Discharge Order for a single, limited purpose" that is unrelated to the injunction against collection. Appellant's Reply Br. at 6–7.[5] As discussed, Appellant did not intend for this amendment to somehow to revive Appellee's personal liability to Appellant. See id. at 1–2; Appellant's Reply Br. at 6–7.

Appellant's second requested form of relief fares no better. They request in the alternative that Appellee's discharge "be delayed, with respect to [Appellant] and [Appellant's] claim as filed (which includes its subrogation claims), until the final disposition of the [TBE Property] and distribution of the proceeds of the Property (or the equivalent) to appropriate parties, including, without limitation, [Appellant]." Recons. Mot. at 12–13. Again, Appellant does not seek permanent revocation of the discharge order, but rather a temporary deferral until they are able to liquidate the TBE Property in order to avoid the future risk of a revived exemption motion. Therefore, Appellant fails to show how they would "benefit in a tangible [and pecuniary] way" from such a deferral. See In re Old Carco LLC, 576 F. App'x at 39.

In summary, Appellant has neither alleged a cognizable injury, nor requested any relief that would materially remedy any cognizable injury. Appellant thus lacks standing to seek its

---

[5] Appellant furthermore made clear that they were not seeking complete revocation of the Discharge Order, as such a request would fall within the purview of 11 U.S.C. § 727(d). This section limits the Court's ability to revoke a discharge to certain circumstances, e.g., where there has been some fraud on the part of the debtor. See In re Eccleston, 70 B.R. 210, 212–13 (Bankr. N.D.N.Y. 1986) ("[A] creditor desiring revocation of a discharge must allege as grounds actions which are proscribed by [§ 727]"). Appellant does not allege that Appellee has done anything that would satisfy these requirements for revocation. Instead, Appellant believed that § 727 did not prohibit the relief they were seeking, i.e., narrow amendment of the Discharge Order. See Hr'g Tr. at 2:10–3:4.

two primary forms of relief, <u>see</u> Recons. Mot. ¶¶ 17–18, and its Appeal is dismissed to the extent that they seek those forms of relief.

### B.  The Bankruptcy Court's Jurisdiction to Issue the Discharge Order

Appellant's briefs raise one other challenge to the Discharge Order that escapes the standing issues discussed above. Because the Discharge Order was issued while the Appellee's appeal of the Exemption MDO was pending, Appellant argues that Appellee's appeal the Exemption MDO as a basis for invoking the doctrine of appellate jurisdiction with respect to the Discharge Order. <u>See</u> Dkt. No. 5-9 at 3 n.3 ("[I]f the Discharge Order did have any substantive effect with respect to the [TBE Property] as the [Appellee] contends in the opposition, the appeal of the Exemption Order arguably removed jurisdiction for the Bankruptcy Court to enter the Discharge Order . . . ."); <u>see also</u> Appellant's Br. at 12 n.4 (similar). This is a challenge to the jurisdictional validity of the Discharge Order itself on the basis of the doctrine of exclusive appellate jurisdiction.

The Court has an obligation to consider the Discharge Order's validity sua sponte. By suggesting that the Bankruptcy Court lacked jurisdiction to issue the Discharge Order, Appellant calls into question both the Bankruptcy Court's jurisdiction to issue the Discharge Order and this Court's appellate jurisdiction over the merits of the Reconsideration Order. <u>See</u> <u>Bernstein v. Universal Pictures, Inc.</u>, 517 F.2d 976, 979 (2d Cir. 1975) ("[L]ack of jurisdiction is so fundamental a defect that the rule permits a judge to recognize it sua sponte at any time."); <u>In re Chowaiki & Co. Fine Art Ltd.</u>, 593 B.R. 699, 710–11 (Bankr. S.D.N.Y. 2018) ("[Any] party of interest can raise the issue of subject matter jurisdiction without a formal motion and, if found to be valid, the court is obligated to dismiss the case <i>sua sponte</i>."); <u>see also</u> <u>United Student Aid Funds, Inc.</u>, 559 U.S. at 270–71 (explaining that "where a judgment is premised . . . on a certain

type of jurisdictional error," it may be void, and "[a] void judgment is a legal nullity"). A court sitting in appellate jurisdiction thus has a "special obligation" to "satisfy itself not only of its own jurisdiction, but also that of the lower court[] in a cause under review." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). The Court will therefore determine whether the Bankruptcy Court was deprived of subject-matter jurisdiction by virtue of the appeal of the Exemption MDO.

1.   *Appeal of the Exemption MDO Did Not Deprive the Bankruptcy Court of Jurisdiction to Enter the Discharge Order*

At the commencement of the Bankruptcy Action, an estate was created consisting of "all [non-exempt] legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a); see also Taylor v. Freeland & Kronz,, 503 U.S. 638, 642 (1992) ("When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate."); Owen v. Owen, 500 U.S. 305, 308 (1991) ("An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions."). A corollary of this principle is the "snapshot rule," which "holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events." In re Ward, 595 B.R. 127, 138 (Bankr. E.D.N.Y. 2018) (quoting Viegelahn v. Frost (In re Frost), 744 F.3d 384, 386 (5th Cir. 2014)).

Under the snapshot rule, Appellee's interest in the TBE Property is determined with reference to *the moment it was transferred to the bankruptcy estate*; the nature and extent of that interest has not been changed by subsequent events. In other words, because the Bankruptcy Court issued the Discharge Order *after* the exemption determination, the Discharge Order could not have had any bearing on the ability of the Appellee to claim that the TBE Property was

exempt under 11 U.S.C. § 522(b)(3)(B). And, because the exemption status of the TBE property was not altered by the Discharge Order, the Discharge Order did not implicate "issues on appeal" or "matters undeniably related to issues on appeal" in the Exemption Appeal MDO.[6] See In re Southold Dev. Corp., 129 B.R. at 21.

The Court therefore concludes the Discharge Order is not invalid for lack of jurisdiction. See Dkt. No. 5-9 at 3 n.3. To the extent that Appellant raises any other challenges to the validity of the Discharge Order, the Court finds those challenges unavailing. And, because Appellant lacks standing to bring its non-jurisdictional claims, this Court lacks subject-matter jurisdiction over those claims, and so the Appeal is dismissed in its entirety. See FRCP 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Appeal (Dkt. Nos. 1, 7) is **DISMISSED** for lack of subject-matter jurisdiction; and it is further

---

[6] Appellee did raise a second issue on appeal from the Exemption MDO: whether "the fact that [Appellee] ha[d] received his discharge impact[ed] [Appellant's] status as an alleged joint creditor such that it [could] no longer can defeat the TBE." DiStefano II, Dkt. No. 9 at 8. However, the Court found that this issue was not properly before the Court because it was raised for the first time on appeal. See Exemption Appeal MDO at 19–20. Critically, this means that the validity of the Discharge Order was raised for the first time almost three months *after* the notice of appeal was filed. See DiStefano II, Dkt. No. 1. Appellee did not retroactively divest the Bankruptcy Court of jurisdiction to issue the Discharge Order by raising a novel issue mid-appeal. Nor could the notice of appeal have vested this Court with exclusive appellate jurisdiction over issues that had not yet been raised in the Bankruptcy Court. In short, Appellee's improper inclusion of this issue did not invalidate the Discharge Order under the theory of exclusive appellate jurisdiction.

**ORDERED**, that the action is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk shall terminate this case; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 28, 2023
           Albany, New York

LAWRENCE E. KAHN
United States District Judge